### YLDEFONSO GUERRERO v. THE STATE.

#### No. 1822.    Decided November 9, 1898.

#### 1.   Murder—Duel—Charge.

On a trial for murder, where it appeared from the evidence that on the morning of the day of the homicide the parties had an altercation, at which time deceased insisted that they would step aside and fight; that later in the day he met defendant and suggested that they would retire to the suburbs of the town and settle the matter; that they subsequently went off by themselves, but how the killing occurred is only known from appellant's testimony and other circumstances; Held, the testimony does not show such a prearrangement to fight with deadly weapons as would constitute a duel, and the court erred in charging the jury that "if either of the combatants in a duel be killed, the survivor shall be deemed guilty of murder in the first degree and punished accordingly."

**2. Same—Charge Submitting Only Murder in First Degree and Self-Defense.**

On a trial for murder, when, in previous altercations between the parties deceased was the aggressor and had invited defendant to go out and settle it, to which defendant protested, but followed him, the deceased being armed with a pistol and defendant having only a knife, the character of which was not disclosed, and there was no eyewitness to the fight in which defendant was shot through with deceased's pistol, and defendant's testimony as a witness raised the issue of self-defense, Held, the court erred in restricting the jury to murder in the first degree on the one hand and self-defense on the other.

**3. Same—Murder in Second Degree and Self-Defense.**

Upon the facts stated in the foregoing paragraph, it was error for the court to fail to charge upon murder in the second degree. A case can rarely arise where the court would be required to charge upon self-defense in which a charge upon murder in the second degree would not also be required.

APPEAL from the District Court of Webb. Tried below before Hon. A. L. McLANE.

Appeal from a conviction for murder in the first degree; penalty, imprisonment for life in the penitentiary.

Appellant was charged by the indictment, which in the first count charged him with the murder of Miguel Salazar, on the 17th day of April, 1898, by stabbing him with a knife. The second charged that the defendant fought "a duel with deadly weapons, to wit, a knife and pistol, with Miguel Salazar, and the said Yldefonso Guerrero did then and there, with malice aforethought, kill the said Miguel Salazar by then and there stabbing him with a knife."

The entire testimony as found in the statement of facts is as follows: On Sunday noon, April 17, 1898, in Laredo, Webb County, Texas, a quarrel arose over a game of cards, in which the deceased, Miguel Salazar, and the defendant, Yldefonso Guerrero, became involved with each other. Miguel Salazar had a rock in his hand, and defendant had a bottle, with which weapons they were about to fight, when they were separated by the bystanders; and thereupon the quarrel was apparently abandoned, the defendant going away. Deceased shortly afterwards overtook defendant, who was in company with Jose Juarez, and addressing himself to Juarez, said: "Be good enough to allow us [meaning defendant and himself] to go by ourselves and settle our difficulties in a friendly way." Juarez replied: "Do me the favor to settle your differences when I am not present." Defendant did not speak. Inez Salazar, a brother of the deceased, then came up and deceased requested Juarez to return to the card table and pay the woman of the house 25 cents which she claimed. Juarez said he had settled her claim. Then deceased started home to get his shoes sewed up, as they were torn. Defendant and Juarez went off to Juarez's house near by, and after a short stay defendant left, going towards his home, on the opposite side of town; and on entering the Market square, some time in the afternoon, he met the deceased, who again invited him to go with him for the purpose of having a settlement of their differences. The defendant and deceased then went along together a distance of about one mile, into an arroyo, or dry creek,

out of the populated part of the town. While on their way, the defendant was heard to say, "I am a man of family and I don't want any trouble with you." The manner of the defendant and of the deceased, while going together, attracted attention. Inez Salazar, a brother of deceased, and defendant's father and brother and the sheriff were trying to overtake them. Fernando Vasques, while at home, saw them as they were nearing the arroyo. He arose from his seat and went to overtake them, Salazar being a friend of his family, but the defendant was a stranger. He saw them go down the path into the arroyo, deceased in the lead, and as soon as they disappeared, and before he could get to them, he heard a pistol shot. Running rapidly, he came on the ground and saw the defendant on top of Salazar's back. Salazar was down on his hands and knees and appellant was striking him in the side with a knife. In his left hand, defendant had Salazar's pistol. Vasquez ran up to defendant, and raising his hands over his head cried out, "Don't kill him; don't kill him." Defendant then jumped up, and changing the pistol to his right hand advanced on Vasquez, saying: "You, too, cabron," and fired at him. Vasquez ran off a short distance. Inez Salazar appeared on the scene about the same time that Vasquez got there. He attacked defendant with rocks, while the latter was stabbing his brother. After Vasquez ran off, defendant turned on Inez Salazar, saying, "You, also, cabron," making at him with the knife. Inez ran away, and then defendant started off in a run in another direction, the sheriff and others following. When overtaken by the sheriff defendant refused to surrender and attempted to stab, but was knocked in the head by the sheriff's pistol. The sheriff also struck him on the hand with his pistol, injuring his finger. The defendant was taken back to where Salazar was in the arroyo. Salazar was dying. He said to his brother, "It is useless to send for a doctor. Don't you see I am dying? I won't live five minutes." When asked how it all happened, he said, "He [meaning defendant] struck me from behind." Deceased spoke no more, and died in a few minutes after. The defendant was on the ground near by, very weak from loss of blood and exhaustion. He had been shot in the breast, the ball entering on the left side in front and coming out on the right side in front. When Vasquez and Inez Salazar first saw the defendant, while fighting in the arroyo, his shirt front was bloody, and he had blood in his mouth when arrested. Defendant had no pistol when arrested, and deceased's pistol was found in the arroyo near where the fight had occurred. There were two cartridges discharged from it. The other chambers were loaded. Deceased had two knife stabs in the right side under his right arm, one on right hip, and one stab in the left arm. Defendant, while going along with deceased to the arroyo, carried his coat over his left shoulder, and it was found in the arroyo burning from a pistol shot fired so close that the powder could be seen on it.

The defendant testified in his own behalf, saying: "My name is Yldefonso Guerrero, and I killed Miguel Salazar to save my own life. After I left Jose Juarez, I was going home and met deceased at the Market

plaza. He insisted on my going with him to settle our trouble amicably, so he said. I told him I did not want any difficulty. We had had a quarrel that morning, and he and his brothers Inez and Rafael Salazar tried to jump on me, but were prevented by the bystanders. I left, and he followed me and wanted me to go out with him, but Juarez told him he could not have trouble while he was present. I turned back and went with deceased quite a distance, and then I said: 'Here is a good place; now tell me what you have to say.' But he wanted to go further, and then remembering that I had not seen my child, I concluded to go on with him, but I did not want any difficulty with him. I had my knife in my left side, covered by my coat, which I carried on my left shoulder, but I did not tell him I was armed, because I thought he might want to fight at once, and I did not want to fight. When we got to the arroyo, where the bridge crosses it, there was Inez Salazar and others playing cards under the bridge. The deceased said we could do nothing, and we then separated and I started home, but the deceased overtook me, and I told him I wanted to avoid trouble; that I had a family. He said we could settle it in a friendly way. We then turned back and went into the arroyo above the bridge. Deceased was in front of me as we got into the arroyo, and he turned and said to me, 'Are you armed?' and I said, 'No.' He then said: 'Well, I am. Now I have got you where I want you. Take that, you son of a bitch,' and he fired at me with a pistol. I jumped at him and struck him with my knife in the left side, and then I stabbed him several times. Inez Salazar and Fernando Vasquez also attacked' me, and struck me in the head and on the hand with rocks while I was defending myself from deceased. Deceased shot me in the breast; here is the scar. [Wound shown to the jury.] I did not stab him from behind. I did not have his pistol. I did not shoot at Vasquez. He lies. I did not attack Inez Salazar. I did not strike at the sheriff. Deceased shot at me twice. I was not on top of him when he fired. He was about fifteen feet off when he fired the first time. The second shot powder-burned my face. I don't know how my coat caught fire."

No brief on file for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life; hence this appeal.

Appellant objected to the following charge of the court: "And the law further declares that, if either of the combatants in a duel be killed, the survivor shall be deemed guilty of murder in the first degree, and be punished accordingly." There was some testimony in this case indicating a mutual combat, but we fail to find testimony showing a duel, as defined by article 715 of the Penal Code. We also refer to the oath of office re-

quired by the Constitution, in this connection. The most that can be said, as suggestive of a duel, as shown by the record, is that the deceased insisted in the morning, when he and the defendant had an altercation, that they step aside and fight. Later in the day he met the appellant, and then suggested to him that they retire to the suburbs of the town of Laredo and settle the matter. Defendant did not want to go, but went along, protesting that he did not want to fight; that he had a family. They went off by themselves, and how the killing occurred, except from the testimony of appellant himself, is only gathered from circumstances. We believe that the testimony does not show that prearrangement to fight with deadly weapons which would constitute a duel, and that the court erred in giving the charge.

Appellant also insists that the court committed an error in failing to charge on murder in the second degree and on manslaughter. The record presents a very meager statement of facts, but it appears that the court should have given a charge on murder in the second degree, and probably on manslaughter. The court gave a charge on murder in the first degree, and a charge on self-defense. The homicide occurred in a secluded portion of the suburbs of Laredo. No eye-witnesses saw it, except appellant. His testimony raises self-defense, and the State relies exclusively on circumstantial evidence as to how the fight began. Appellant in the struggle was severely wounded, being shot through with a pistol which deceased is shown to have had. Deceased was shown to be the aggressor in all the altercations which had occurred between them, and in the invitations to go out and settle it. The State's testimony shows that appellant protested against fighting, but followed along. He was not equally armed with the deceased, deceased having a pistol, and defendant only a knife,—the character of the knife not being disclosed. If defendant was following along, not for the purpose of engaging in the conflict with deadly weapons, and deceased set upon him and shot him, then appellant had a right to defend himself, and to use his knife; and thus his right of self-defense would be complete. If appellant was following deceased, not for the purpose of engaging in a deadly conflict, and was suddenly shot by deceased, and he then succeeded in wrenching his pistol from him, which he is shown to have had when first seen by the State's witnesses, and then, not in his necessary self-defense, stabbed and killed deceased, it might have been murder in the second degree, or manslaughter. If appellant, not desiring to fight deceased, was goaded by his repeated aggressions and invitations to fight, and at length agreed to fight him, and followed him for that purpose, but such intent was not formed when his mind was cool and deliberate, but existed because of the aggressions and insults of deceased, and so engaged in a mutual combat with the deceased, and slew him, it would not be murder with a sedate and deliberate mind, but would be murder upon implied malice. At least, under the circumstances of this case, the jury should have been afforded the right to pass upon this question; and the court should have not restricted them

to murder in the first degree on the one hand, or self-defense on the other. A case can rarely arise where a court would be required to charge self-defense in which he would not also be required to give a charge on murder in the second degree. We believe the court erred in failing to give a charge on murder in the second degree. The court gave a charge on murder in the first degree, which does not seem to be excepted to, which appears to eliminate the question of malice altogether; and we simply call attention to this in view of another trial of the case. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

HURT, Presiding Judge, absent.